UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17-cv-204-FDW

| | |
|---|---|
| TIMOTHY UZZELL, | ) |
|                Plaintiff, | ) |
| vs. | )    **ORDER** |
| FNU MURRAY, et al., | ) |
|                Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Christopher Nichols and Darren Daves. (Doc. 24).

## I. BACKGROUND

### A. Procedural Background

On November 8, 2017, pro se Plaintiff Timothy Uzell, an inmate in the custody of the North Carolina Department of Public Safety ("NCDPS"), currently incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina, filed this action, pursuant to 42 U.S.C. § 1983, naming as Defendants Kyle Murray, Christopher Nichols, Darren Daves, and Owen Blanton, all of whom are alleged to have been working as correctional officers at Alexander at all relevant times. Plaintiff alleges that Defendants used excessive force against him on March 27, 2015. Plaintiff seeks compensatory damages.

On September 10, 2018, Defendants Nichols and Daves filed the pending summary judgment motion. (Doc. 24). On September 13, 2018, this Court entered an order in accordance

with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. Plaintiff did not respond to the summary judgment motion, and the time to do so has passed.[1] Thus, this matter is ripe for disposition.

B.  Factual Background

1.  Plaintiff's Allegations

The unedited allegations of Plaintiff's Complaint are as follows:

> On the date of 3/27/2015 at approximately 2 p.m. I was escorted out of my cell by Lt. Nichols, Officer Daves, Officer Murray, and Officer Blanton to the upstairs shower. After Officer Daves secured the shower door by locking it with me inside he opened the trap door to take the handcuffs off of me. A brief struggle happened and Officer Blanton along with Officer Murray and Lt. Nichols helped subdue my arms while Officer Blanton and Officer Daves held my left arm. Lt. Nichols and Officer Murray began to bend my fingers trying to break them. As I began to tell for him to stop Lt. Nichols said to Officer Murray to not break all of my fingers just 1 and maybe one more. At that time Officer Murray took my index finger and began pulling it towards my thumb while pulling my other 3 fingers in the opposite direction, splitting the webbing in between my fingers. I had to get stitches as well as now physical therapy caused by damaged nerves in my hand from the excessive force that was used. A violation of my Eighth Amendment.

(Doc. 1 at 3-4).

2.  Defendants' Summary Judgment Materials

In support of the summary judgment motion, Defendants rely on the pleadings and all the attachments to the pleadings, including but not limited to the following (1) the Declaration of Lauren Carcioppolo ("Carci Decl."); (2) the Declaration of Raymond Hamilton ("Hamilton Decl."), a non-party who was employed as a correctional captain at Alexander and was the

---

[1] Because Plaintiff did not file a response to the summary judgment motion, he is deemed to have abandoned his claims. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

investigating officer with respect to the incident; (3) the Declaration of Christopher Nichols ("Nichols Decl."), a named defendant who was employed as a correctional lieutenant at Alexander; and (4) the Declaration of Darren Daves ("Daves Decl."), a named defendant who was employed as a correctional officer at Alexander.

Defendants' summary judgment materials show that on March 27, 2015, at approximately 14:00 hours, Lt. Nichols and Officers Daves, Murray, and Blanton were called to restrictive housing after Plaintiff smeared feces on his cell wall and the cell window of his door and refused orders to submit to handcuffs. (Doc. 24-7: Ex. F (p. 1 of Incident Report)). Upon Lt. Nichols's arrival, he observed what looked and smell like feces smeared all over Plaintiff's cell window. (Doc. 24-8 at ¶ 12: Nichols Decl.). Lt. Nichols ordered Plaintiff to clean an area of his window so he could observe his actions before having him submit to restraints. (Id.). Plaintiff complied with Lt. Nichols's order to clean the window and submitted to restraints. (Id.).

Lt. Nichols, Officer Daves, and Officer Murray then escorted Plaintiff to the shower so he could clean the feces off of himself. (Id.). When the officers and Plaintiff reached the shower, Plaintiff entered the shower; the shower door was secured; and Plaintiff turned around and stuck his hands through the trap door to allow staff to remove his handcuffs. (Id.; Doc. 24-9 at ¶ 10: Daves Decl.). Officer Daves then released the handcuffs from Plaintiff's right hand. (Doc. 24-8 at ¶ 12; Doc. 24-9 at ¶ 10). After his right hand was free from the handcuffs, Plaintiff, in one rapid motion, spun around and lunged through the trap opening toward staff, striking Lt. Nichols in the forearm near his elbow. (Doc. 24-8 at ¶12).

After striking Lt. Nichols, Plaintiff grabbed Officer Daves' right hand and began twisting and pulling violently. (Id.; Doc. 24-9 at ¶ 10). Officer Daves ordered Plaintiff to let go of him. (Doc. 24-8 at ¶ 12; Doc. 24-9 at ¶ 10). Plaintiff then grabbed Officer Murray's keys. (Id.). Officer

Murray struggled with Plaintiff to try to maintain control of his keys. (Doc. 24-9 at ¶ 10). Staff continued to attempt to pry Plaintiff's hand off Officer Daves' hand. (Id.). As Plaintiff was losing his grip on Officer Daves' hand, he latched onto Officer Daves's wedding ring and pulled it off his finger, causing injury to Officer Daves' knuckle. (Doc. 24-8 at ¶ 12; Doc. 24-9 at ¶ 10.)

Meanwhile, Lt. Nichols maintained control of Plaintiff's arm while officers Murray and Daves attempted to get the keys out of his grip. (Doc. 24-8 at ¶ 12). Officer Murray grabbed Plaintiff's hand then turned away from Plaintiff and broke Plaintiff's grip on Officer Murray's keys. According to Officer Daves and Lt. Nichols, this was the point at which Plaintiff's hand was injured by the keys. (Doc. 24-8 at ¶ 12; Doc. 24-9 at ¶ 10). Additional staff arrived, and Plaintiff finally complied with the requests to be placed into full mechanical restraints. (Doc. 24-8 at ¶ 12).

Plaintiff was seen by medical for his injury, and he received stitches to close the wound between his fingers. (Id.). Both Officers Daves and Murray were seen by medical for their injuries. (Id.). Although Lt. Nichols was struck in the arm, he chose not to seek medical attention. (Id.). All three staff members returned to duty. (Id.).

Captain Raymond Hamilton subsequently investigated the use of force incident. (Doc. 24-1 at ¶ 16: Hamilton Decl.). During his investigation, Captain Hamilton took numerous witness statements, reviewed video of the incident, and took pictures of Plaintiff's injuries. (Id. at ¶ 17). After reviewing all the information, Captain Hamilton concluded that (1) the incident happened as described by Lt. Nichols and the correctional officers described, (id. Ex. F); (2) the use of force was necessary because Plaintiff disobeyed and continued to disobey orders to release Officer Daves' hand, he had injured and continued to injure Officer Daves, and he grabbed Officer Murray's keys, (id. at ¶ 19); (3) Plaintiff's injuries were consistent with either the keys being pried out of his hand or Plaintiff's hand being pried away from Officer Daves' hand, (id. at ¶ 21); (4)

4

the use of force against Plaintiff on March 27, 2015, by all personnel involved was applied in accordance with the Use of Force P & P and SOP, (id. at ¶ 24); and (5) Plaintiff was not subjected to an excessive use of force by any NCDPS personnel. As a result of his conduct, on March 27, 2015, Plaintiff was charged and found guilty of the offenses of Threatening to Harm or Injure Staff, Disobeying an Order, and Assault on Staff with a Weapon. (Doc. 24-5, Ex. D; Doc. 24-7, Ex. F).

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore,

6

although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

For the following reasons, Defendants are entitled to summary judgment as to Plaintiff's claim against them for excessive force. First, to the extent that Plaintiff has sued Defendants in their official capacities, the suit is against the NCDPS and the State of North Carolina. However, neither the State nor its agencies constitute "persons" subject to suit under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003).

Next, to the extent that Plaintiff has sued Defendants in their individual capacities, the Court finds that Plaintiff has not raised a genuine dispute of fact as to whether Defendants used excessive force against Plaintiff. Defendants' evidence on summary judgment shows that the force used by Defendants was applied in a good-faith effort to restore order and discipline, and it was not done maliciously and sadistically for the very purpose of causing harm.[2] That is, the record demonstrates that the use of force was appropriate to control and restrain Plaintiff and to prevent further injury to staff given his non-compliance with verbal orders and his combative behavior. The undisputed evidence shows that Plaintiff attacked by violently turning and striking Lt. Nichols's arm, by grabbing Officer Daves' hand and pulling and twisting his hand and arm, and

---

[2] The Court notes that, as to any legal conclusions made in Defendants' supporting affidavits with regard to use of force, those legal conclusions have no impact on any legal determination by this Court as to whether Defendants used excessive force. See United States v. Perkins, 470 F.3d 150, 157 (4th Cir. 2006). Therefore, the Court has not given these legal conclusions any weight in its determination on summary judgment.

7

by grabbing Officer Murray's keys. In addition, Plaintiff refused repeated orders to let go of Officer Daves' hand. Indeed, not only did Plaintiff refuse repeated orders, instead, he escalated the incident by grabbing Officer Murray's keys.

Moreover, the amount of force was directly related to the necessity of the use of force. Specifically, the force was applied to Plaintiff's hand and fingers in order to pry his grip off Officer Daves and to retain or regain control of Officer Murray's key. Plaintiff was attacking and injuring the officers. He was pulling Officer Daves' arm through the slot and twisting. Officer Daves asserted in his affidavit that he believed that Plaintiff might be able to use the frame of the slot to break his arm. (Doc. 24-9 at ¶ 10). Later in the incident, Plaintiff grabbed Officer Murray's keys. The officers involved in this incident did not just reasonably believe there was a threat--the threat was real and significant. Furthermore, Defendants' evidence shows that the officers did try to temper their response. Officer Daves repeatedly ordered Plaintiff to let go of his hand. (Id.). Finally, in his own declaration, Lt. Nichols asserts that be believed from his recollection of the incident that Plaintiff "was injured . . . by the keys as Officer Murray pulled the keys from [Plaintiff's] grip. These keys are not normal household keys. Some of the keys can be as long as three inches and can be jagged and sharp and could cause significant injury. Officer Murray maintained control of [Plaintiff's] arm until additional staff arrived." (Doc. 24-8 at ¶ 12).

Even viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Defendants had a sufficiently culpable state of mind because the evidence does not support the contention that they acted "maliciously or sadistically for the purpose of causing harm."[3] Whitley, 475 U.S. at 321-26, Wilkins, 559 U.S. at 37. Although Plaintiff alleges in his

---

[3] Defendants also argue that before March 27, 2015, Plaintiff had an extensive history of infractions while in prison including, disobeying orders, associating with gangs, threatening to

8

unverified complaint that sometime after the "struggle happened," Lt. Nichols told Officer Murray not to "break all of [Plaintiff's] fingers just [one]," both Daves and Nichols deny that Nichols made this statement. (Doc. 24-8 at ¶ 13; Doc. 24-9 at ¶ 11). Moreover, as noted, Plaintiff did not respond to the summary judgment. As indicated above, once the party moving for summary judgment has provided a forecast of evidence that shows there is no genuine issue of fact, the nonmoving party, and especially if the nonmoving party has the burden of proof, must come forward with evidence that supports his or her contention that there is one or more genuine issue of material fact. Anderson, 477 U.S. at 250. In addition, as also set forth above, a court considering a motion for summary judgment cannot deny the motion on the basis of a scintilla of evidence and may, in fact, ignore the nonmoving party's version of events if that version of events seems implausible given the weight of the evidence submitted by the moving party. Sylvia Dev. Corp., 48 F.3d at 818 (4th Cir. 1995).

In sum, application of the Whitley factors demonstrates that the use of force was necessary and not excessive. Thus, Defendants Daves and Nichols are entitled to summary judgment as to Plaintiff's excessive force claim against them.[4] Furthermore, despite that Defendants Blanton and

---

harm/injure staff and assault with a weapon. Further, the Plaintiff had been brought to the restrictive housing unit on dozens of occasions. (Doc. 25 at 3). Defendants contend that this evidence is relevant to the officers' state of mind. See Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005) (reasonableness determined by information possessed by the officer). In ruling on the summary judgment motion, however, the Court has not considered this evidence because Defendants have presented nothing to show that they actually knew about Plaintiff's numerous disciplinary infractions.

[4] Defendant also raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court not need determine whether Defendants are entitled to qualified immunity. Defendants also contend that because Plaintiff did not respond to Defendants' request for admission, he is deemed to have admitted all the Requests for Admissions ("RFAs"). (Doc. 25 at 14). Because the Court finds that the evidence presented by Defendants, which Plaintiff has not even attempted to rebut, results in a finding of no excessive force, the Court will not address whether

Murray have not joined in the summary judgment motion, the Court finds that the undisputed evidence on summary judgment supports the dismissal of Plaintiff's claims against these additional defendants.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant summary judgment for all Defendants in this action.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants Daves' and Nichols' Motion for Summary Judgment, (Doc. 24), is **GRANTED**. Furthermore, for the same reasons that summary judgment is being granted in favor of Defendants Daves and Nichols, summary judgment is also appropriate as to Defendants Blanton and Murray. Thus, this action shall be dismissed with prejudice as to all Defendants.

2. The Clerk is instructed to terminate this action.

Signed: September 16, 2019

Frank D. Whitney
Chief United States District Judge

---

Plaintiff is deemed to have admitted Defendants' RFA's by failing to respond to them.

[5] Courts have held that if one defendant is granted a motion for summary judgment, the district court may sua sponte enter summary judgment in favor of nonmoving, additional defendants "if the motion raised by the first defendant is equally effective in barring the claim against the other defendants, and the plaintiff had an adequate opportunity to argue in opposition to the motion." Colan v. Cutler-Hammer, Inc., 812 F.2d 357, 360 n.2 (7th Cir. 1987); see also Al-Hashimi v. Scott, 756 F. Supp. 1567, 1569 (S.D. Ga. 1991) (stating that "[a]lthough the other defendants ... did not join in the motion for summary judgment, the rationale for granting [the moving defendant's] motion applies equally to them" and, thus, granting summary judgment as to all defendants).